UNITED STATES BANKRUPTCY COURT                    **NOT FOR PUBLICATION**
SOUTHERN DISTRICT OF NEW YORK

```
-------------------------------------------------- x
                                                   :
In re:                                             :
                                                   :    Case No. 11-11388 (JLG)
   Big Apple Volkswagen, LLC,                      :    Chapter 11
                                    Debtor         :
                                                   :
-------------------------------------------------- x
                                                   :
Julian Salim,                                      :
                                                   :
                                    Plaintiff      :
                                                   :    Adv. Proc. No. 15-01408 (JLG)
   v.                                              :
                                                   :
Alan Nisselson as Trustee,                         :
                                    Defendants     :
-------------------------------------------------- x
```

### MEMORANDUM DECISION AND ORDER GRANTING
### DEFENDANT'S MOTION TO DISMISS COMPLAINT

**A P E A R A N C E S :**

WINDELS MARX LAND & MITTENDORF, LLP
*Attorneys for Plaintiff Alan Nisselson, Trustee*
156 West 56th Street
New York, New York 10019
By:   Howard L. Simon, Esq.
      Leslie S. Barr, Esq.
      Dean M. Solomon, Esq.

GILL & KADOCHNIKOV, P.C.
*Attorneys for Plaintiff Julian Salim*
125-10 Queens Blvd., Suite 223
Kew Gardens, New York 11415
By:   Navpreet K. Gill, Esq.
      Alex Kadochnikov, Esq.

**HON. JAMES L. GARRITY, JR.**
**U.S. BANKRUPTCY JUDGE**

Alan Nisselson is the court-appointed chapter 7 trustee (the "**Trustee**") of the estate of

Big Apple Volkswagen LLC ("**Big Apple Volkswagen**" or the "**Debtor**") and has served in that

capacity since his appointment on December 23, 2011 [ECF Doc. No. 148].[1]   For the period of

May 12, 2011 through December 22, 2011, Mr. Nisselson served as the Debtor's chapter 11

trustee.   In that capacity, and as relevant to this adversary proceeding, Mr. Nisselson sold

substantially all of the Debtor's assets and businesses (collectively, the "**Dealership Assets**") to

Ted Bessen or his designee, Teddy Volkswagen of the Bronx, LLP pursuant to a court-ordered

sale under §363 of the Bankruptcy Code (the "**Asset Sale Transaction**")[2], and sued Ratiba Salim

("**Ratiba**") and Wahid Saleem ("**Wahid,**" and collectively with Ratiba, the "**Parents**") to avoid

and recover prepetition transfers to them from the Debtor totaling approximately $705,000, under

state and federal laws.[3]   That action is pending before this Court.[4]

Julian Salim ("**Julian**"), the plaintiff herein, is the Debtor's former managing member

and the son of Ratiba and Wahid.   On or about November 24, 2015, acting *pro se*,[5] he

---

[1]  References to "ECF Doc. No. __" refer to docket entries in the Debtor's main case, 11-11388 (JLG), and "AP ECF Doc. No. __" refer to docket entries in this adversary proceeding, 15-01409 (JLG), and "Trustee AP ECF Doc. No. __ refer to docket entries in the Trustee's adversary proceeding against Ratiba and Wahid, 11-02251 (JLG).

[2]  *See Order Authorizing Trustee's Sale of Debtor's Dealership Assets and Granting Other Related Relief* [ECF Doc. No. 119], which authorized the sale of the Dealership Assets to Ted Bessen or his designee.  The "Dealership Assets" included parts inventory, furniture, fixtures and equipment, special tools and equipment, customer service and sales records, five (5) vehicles, goodwill, rights to trade names, telephone numbers, the dealership franchise agreement, and related assets.

[3]  *See* Complaint [Trustee AP ECF Doc. No. 1].

[4]  Pursuant to the Court's *Memorandum Decision and Proposed Findings of Fact and Conclusions of Law to Grant in Part and Deny in Part Plaintiff's Motion for Partial Summary Judgment,* dated March 17, 2016 [Trustee AP ECF Doc. No. 71], this Court recommended that the District Court grant the Trustee summary judgment against Ratiba, but deny his motion for summary judgment against Wahid.  That decision is subject to *de novo* review in the District Court.

[5]  Although Julian filed the Complaint *pro se*, he is represented by counsel on this Motion.  *See Notice of Appearance and Substitution of Pro Se Litigant* [AP ECF No. 8].

commenced this adversary proceeding against the Trustee by filing a three count complaint [AP ECF No. 1] (the "**Complaint"**) seeking both damages occasioned by the Trustee's alleged breach of his fiduciary duties (the First Cause of Action) and breach of his Agreement (defined below) with Julian (the Second Cause of Action), and an injunction against the continued prosecution of the Recovery Action (the Third Cause of Action).  The matter before the Court is the Trustee's motion to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6)[6] [AP ECF Doc. No. 5] (the "**Motion**").[7]  Julian opposes the Motion and seeks leave to replead to the extent the Court finds grounds to dismiss the Complaint.

At the April 21, 2016 hearing on the Motion (the "**April 21 Hearing**"), the Plaintiff modified the relief he is seeking in the Complaint. He waived all claims in the Complaint for money damages, dismissed the First Cause of Action, and limited the relief he is seeking under the Second Cause of Action to an injunction barring the Trustee's continued prosecution of the Recovery Action.  He did not specifically address the Third Cause of Action.  For the reasons discussed herein, the Court finds that the Trustee has established grounds under Rule 12(b)(6) to dismiss the Second Cause of Action, as amended, and the Third Cause of Action, as pled in the Complaint.  Accordingly, the Motion is **GRANTED.**  Because the defects in those claims cannot be cured by repleading the underlying allegations, Julian's request for leave to replead is **DENIED**.

---

[6] Federal Rule of Civil Procedure 12(b)(6) is incorporated by reference in Rule 7012 of the Federal Rules of Bankruptcy Procedure.

[7] The Motion is supported by the *Trustee's Memorandum of Law in Support of Trustee's Motion Pursuant to Fed. R. Civ. P. 12(b)(6) and Bankruptcy Rule 7012 to Dismiss Complaint* [AP ECF Doc. No. 6, which is cited to herein as "**Memo.**", as well as the *Affidavit of Alan Nisselson in Support of Trustee's Motion Pursuant to Fed. R. Civ. P. 12(b)(6) and Bankruptcy Rule 7012 to Dismiss Complaint*, and the *Trustee's Reply Memorandum of Law in Further Support of Trustee's Motion Pursuant to Fed. R. Civ. P. 12(b)(6) and Bankruptcy Rule 7012 to Dismiss Complaint* [AP ECF Doc. No. 15] (the "**Reply**").

## Jurisdiction

The Court has subject matter jurisdiction of this proceeding pursuant to 28 U.S.C. §§ 1334, 157(a) and 157(b)(1) and the Amended Standing Order of Reference M-431 (Preska, C.J.). This is a core proceeding.  *See* 28 U.S.C. § 157(b)(2)(A).

## Background[8]

On or about March 30, 2011 (the **"Petition Date"**), the Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code.  [ECF Doc. No. 1].  As of the Petition Date, the Debtor was in the business of operating a Volkswagen dealership, including service and parts departments (collectively, the "**Business**").  Compl. ¶¶ 1, 8.  The Debtor retained possession and control of its assets and Business as debtor in possession until May, 2011, when the Court appointed Mr. Nisselson as chapter 11 trustee.  *Id.*  ¶ 3.

Within days of Mr. Nisselson's appointment, Julian and Eric Snyder, Esq., who served as Debtor's counsel during the chapter 11 case, met with Mr. Nisselson and his counsel at Mr. Nisselson's office. *Id.*  ¶¶ 4, 5.  Julian alleges that at that meeting, and in response to the Trustee's questions about prepetition wire transfers by the Debtor to various third parties, including Ratiba, Julian "informed the Trustee of all and exact details [of the transfers]," including the money he wired to Syria to purchase used vehicles and funds wired to Ratiba in satisfaction of a prepetition loan that she made to the Debtor.  *Id.* ¶ 5.  He says that "[a]fter [he] disclos[ed] every single transaction of where all the [Debtor's] money went," Mr. Nisselson "asked [him] to get him a buyer [for the Business] as soon as [he] could" and advised him that "he will not sue anyone or take further action."  *Id.* ¶ 5C.  He maintains that Mr. Nisselson

---

[8]  In resolving the Motion, this Court is not required to state findings of fact or conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.  Accordingly, the facts recited are those alleged in the Complaint, which must be presumed as true for purposes of this Motion.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

specifically told [him] that all he wants to do is to sell the dealership and pay VW [C]redit [the secured creditor] their money back so we all can move on. His exact words, and I quote "I know nothing about the dealership business, so get me a buyer and you have my word on not suing anyone."

*Id*.  *See also id.* ¶ 18 ("Alan Nisselson kept insisting on me to get a buyer because he didn't know anything about the car dealership business.")  Julian contends that during that meeting he identified Ted Bessen as a ready buyer of the Business for $1.1 million (*id.* ¶ 6), and advised the Trustee that Mr. Bessen had been in contact with Volkswagen about acquiring the Business and that Julian only needed to confirm the deal with him.  *Id*.  He says that after advising the Trustee about Ted Bessen's interest in acquiring the Business, he and Mr. Nisselson shook hands on a deal (the "**Agreement**") that "if [Julian got] him a buyer [the Trustee] would not sue anyone and would allow [Julian and Greg Samborski, his partner] to continue operating [the] dealership till [sic] it was sold and the debt was paid."  *Id.*

Julian contends that two days after the meeting, he advised the Trustee by telephone that he had confirmed that Ted Bessen was ready to buy the Business (*id.* ¶ 7), and that although the Trustee promised that he would get back to him after he spoke with Mr. Bessen, the Trustee never called him back and, going forward, refused to speak with him about the sale process.  *Id.* Julian also complains that the Agreement notwithstanding, the Trustee refused to allow Julian and Greg Samborski to operate the Business while it was in chapter 11.  He alleges that three days after the meeting, the Trustee "sent one of his attorneys to throw [Julian and Greg] out of the dealership" and "shut the entire operation down by firing all employees only keeping [the Debtor's] accountant, Judy Kalis."  *Id.*  Julian further contends that he asked the Trustee to reconsider his decision to close down the Business since, at that time, the dealership was generating well over $100,000 per month from its parts and service department.  *Id.* ¶ 8.  He says that "[i]t made no sense to shut the operation down and keep the place open for another 9 months

5

only to sell it to the same person I got for them nine months earlier, Ted Bessin [sic]." *Id.* ¶ 9.

He asserts that had they continued to operate the Business, they could have continued to generate

money, kept the Debtor's employees employed and sold the dealership for more money than Ted

Bessen paid for it. *Id.* ¶¶ 12, 17. He contends that the "[Trustee] and VW Credit purposely

ruined the dealership and its value." *Id.* ¶ 17.[9] Julian complains that the Trustee breached his

promises (i) that he would not sue the Parents (*id.* ¶ 10), and (ii) that he would permit Julian and

Greg Samborski to continue to operate the Business pending its sale. *Id.* ¶ 16. As succinctly put

by Julian, "not only did the trustee not keep his promise [not to sue his Parents]; he ruined the

dealership and put it in more debts for no apparent reason." *Id.* ¶ 15.

## The Complaint

The Complaint consists of three causes of action. The First Cause of Action seeks money

damages based on the Trustee's alleged breach of his fiduciary duty to operate the Debtor

pending the sale of the Business. Julian alleges that "Alan Nisselson as a trustee had a fiduciary

duty to keep Big Apple Volkswagen open for business and continue operating it to pay off any

debt," and that he "ruined the dealership by shutting it down, stopping all sales, service and parts

. . . [and] showed no good faith or ethics." Compl. ¶¶ 23, 24.

The Second Cause of Action seeks damages based on the Trustee's breach of his

agreement not to sue Ratiba and/or Wahid and to keep the dealership open pending the sale of

the Business. Julian alleges that "Alan Nisselson promised not to sue Ratiba Salim and Wahid

---

[9]  As further support for that contention, Julian alleges:

> When we left the dealership we had about ten used vehicles in the value of about $100,000.00, and
> $150,000.00 in [the Debtor's] bank account. The dealership was sold for $918,000.00 which
> totals $1,168,000.00. [The secured creditor] was only owed $740,000. Till this day, we were
> never offered any information of where the money went and who got paid . . . .

Compl. ¶ 13.

Saleem" and that "[h]e breached on his agreement as promised not to sue anyone." *Id.* ¶ 25.  In

addition, he contends that "Alan Nisselson breached his contract by not keeping his word to keep

the dealership operating as promised." *Id.* ¶ 26.  In support of those claims, Julian contends that

Mr. Nisselson "repeatedly misled the court throughout the entire case" and "[b]ased on the facts,

circumstances, and series of bad transactions as set forth [in the Complaint,] Alan Nisselson's

act[s] or omissions were done willfully and maliciously to injure Big Apple Volkswagen and its

property." *Id.* ¶¶ 28, 29.

The Third Cause of Action seeks equitable relief – an injunction barring continued

prosecution of the Recovery Action.  In support of that claim, Julian simply asks the Court "to

compel trustee Alan Nisselson from suing Ratiba Salim and Wahid Saleem." *Id.* ¶ 27.

**The Motion**

The Trustee did not file an answer to the Complaint.  Instead, on December 22, 2015, he

filed the Motion.  The Plaintiff and the Parents, who separately have moved to intervene in this

action [AP ECF Doc. No. 10], [10] opposed the Motion.[11]  During the April 21 Hearing, Plaintiff's

counsel advised the Court that Plaintiff waived all claims in the Complaint for money damages

and requested that the Court dismiss the First Cause of Action, and limit the relief sought in the

Second Cause of Action to a request for a judgment finding the Trustee to be in breach of his

covenant not to sue the Parents, and enjoining the Trustee's continued prosecution of the

---

[10] The Parents scheduled the hearing on their motion to intervene for the same day as the hearing on this Motion.
Prior to the hearing on the Motion, the Parents asked the Court to adjourn the hearing on their motion to intervene
pending the resolution of this Motion.  The Trustee acceded to that request and the Court adjourned the hearing on
the motion to intervene.  The Parents did not appear at the hearing on this Motion.  The Court will not consider the
Parents' arguments in opposition to the Motion, except to the extent adopted by Julian.

[11] *See Objection to Motion to Dismiss Complaint*; *Memorandum of Law in Opposition*; and *Affidavit of Julian Salim*
[collectively filed as AP ECF Doc. No. 13] and *Objection to the Dismissal Motion of the Defendant* [AP ECF Doc.
No. 12], respectively.

Recovery Action.  Counsel did not specifically address the Third Cause of Action.  The Trustee

acquiesced to those amendments.  Accordingly, the Court will consider the merits of the Motion

in light of the Complaint, as amended at the April 21 Hearing.

## Legal Standard

Rule 12(b)(6) permits a defendant to seek dismissal of a complaint where the complaint

"fail[s] to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6).  The rule is

"designed to test the legal sufficiency of the complaint, and thus does not require the Court to

examine the evidence at issue."  *De Jesus v. Sears, Roebuck Co.*, 87 F.3d 65, 69 (2d Cir. 1996)

(quoting *Cary v. Mt. Desert Island Hosp.*, 910 F. Supp. 7, 9 (D. Me. 1995)).  *See also Chance v.*

*Armstrong*, 143 F.3d 698, 701 (2d Cir. 1998) (Under Rule 12(b)(6), "the issue is not whether a

plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to

support the claims") (quoting *Branham v. Meachum*, 77 F.3d 626, 628 (2d Cir. 1996)).

Accordingly, in reviewing a Rule 12(b)(6) motion,  the court must "accept as true all factual

allegations [in the complaint] and draw from them all reasonable inferences," but should not

"credit conclusory allegations or legal conclusions couched as factual allegations." *Rothstein v.*

*UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013).

To survive such a motion, the complaint "must contain sufficient factual matter . . . to

'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial

plausibility," and is therefore sufficient to survive a motion to dismiss, "when the pleaded factual

content allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Id.* "[A] well-pleaded complaint may proceed even if it strikes a savvy

judge that actual proof of th[e] facts is improbable, and 'that a recovery is very remote and

8

unlikely.'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

In reviewing a motion to dismiss, the court undertakes a context-specific task "requiring the

reviewing court to draw on its experience and common sense." *Iqbal*, 556 U.S. at 663-64 (citing

*Twombly*, 550 U.S. at 556).

Although Julian is represented by counsel on this Motion, he filed the Complaint *pro se*.

The Court recognizes that "even after *Iqbal* and *Twombly*, we remain obligated to construe *pro

se* complaints liberally, and therefore we look to see whether a *pro se* complaint contains

sufficient factual allegations to meet the plausibility standard by reading the complaint with

'special solicitude' and interpreting it to raise the strongest claims it suggests." *Jackson v. Cty of

Rockland*, 450 Fed. Appx. 15, 18 (2d Cir. 2011) (citation omitted).  Nonetheless, "*pro se*

litigant[s] [are] still obligated to comply with the relevant rules of procedural and substantive

law." *Doe v. Torres*, No. 05 Civ. 3388, 2006 WL 290480, at *3 (S.D.N.Y. Feb. 8, 2006).  *Pro se*

complaints are appropriately dismissed "where a plaintiff has clearly failed to meet minimum

pleading requirements." *Carvel v. Ross*, No. 09 Civ. 0722, 2011 WL 856283, at *8 (S.D.N.Y.

Feb. 16, 2011).

## Discussion

Before considering the merits of the Motion, the Court addresses the scope of the record

available to it in resolving the Motion. On a motion to dismiss, the Court may consider the

complaint and "any written instrument attached to [the complaint] as an exhibit, materials

incorporated in it by reference, and documents that, although not incorporated by reference, are

'integral' to the complaint." *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004); *Chambers v. Time

Warner*, 282 F.3d 147, 152-53 (2d Cir. 2002) (noting that the complaint is deemed to include any

attached exhibits, statements or documents incorporated in to the complaint by reference as well

as any documents that are "integral" to the complaint.).  For incorporation by reference to be applicable, a "[c]omplaint must make a clear, definite and substantial reference" to the document sought to be relied on in determining the motion to dismiss.  *Helpin v. Harcourt*, 277 F. Supp. 2d 327, 330-31 (S.D.N.Y. 2003).

The Complaint included no exhibits, and it referenced no documents.  However, Julian submitted an affidavit in support of his opposition to the Motion.  [AP ECF Doc. No. 13-2].  As it was not attached to the Complaint, or referred to therein, and purports to raise factual matters not alleged in the Complaint, the Court will not consider it in resolving the Motion.  The Trustee submitted with his Motion, or referenced by incorporation therein, multiple documents in support of the Motion.  *See* Nisselson Aff., List of Exhibits [AP ECF Doc. No. 5-2].  There is no indication, however, that Julian relied on any of the documents submitted by the Trustee in drafting the Complaint.  Thus, the Court will not consider those documents as they fall outside the scope of what the Court may consider in reviewing a motion to dismiss as discussed above.

The Court now considers the merits of the Motion as it relates first, to the Second Cause of Action and thereafter, to the Third Cause of Action.

## <u>Second Cause of Action</u>

The Trustee does not challenge the adequacy of the Complaint's allegations in support of the Second Cause of Action.  Rather, he contends that the claim, as amended, must be dismissed because the Agreement – which Julian seeks to enforce -- is unenforceable since it has not been approved by the Bankruptcy Court.  In addition, the Trustee contends that the claim fails because Julian lacks standing to enjoin the Trustee's continued prosecution of the Recovery Action, and because the claim for injunctive relief is barred by laches since Julian waited more than four and a half years to raise the existence of the Agreement as a defense to the relief sought in the

Recovery Action, even as the Trustee was prosecuting that action against the Parents.  The Court

considers those arguments below.

### Failure to Obtain Court Approval

The Trustee argues that even assuming the truth of the Complaint's allegations regarding

the formation of the Agreement, it is unenforceable because it was never subjected to review

pursuant to Bankruptcy Rule 9019, including notice to creditors and approval by this Court.

Memo. 14.  In relevant part, that rule states:

> *Compromise*.  On motion by the Trustee and after notice and a hearing, the court
> may approve a compromise or settlement.  Notice shall be given to creditors, the
> United States trustee, the debtor, and indenture trustees as provided in Rule 2002
> and to any other entity as the court may direct.

FED. R. BANKR. P. 9019(a).  As is discussed below, the view held by a majority of the courts,

including courts in this district, is that the resolution of an estate claim, which is what the

Agreement purports to do, is not enforceable if effected outside the ordinary course of the

debtor's business, unless the Trustee first obtains court authorization to enter into the agreement.

Julian does not dispute that the Trustee failed to obtain Court approval of the Agreement,[12] and

does not contend that the Agreement is within the scope of the ordinary course of the Debtor's

business.  Nonetheless, he contends that there are three reasons why the Agreement is

enforceable.

First, he asserts that pursuant to § 704(a)(1) of the Bankruptcy Code, the Trustee was

authorized to enter into the Agreement without first obtaining Court approval.  That section vests

the Trustee with the authority "'to collect and reduce to money the property of the estate for

which such trustee serves, and close such estate as expeditiously as is compatible with the best

---

[12]  The Court takes judicial notice under Federal Rule of Evidence 201(c)(1) that the electronic docket in this case
reflects that the Agreement was not brought to this Court for review and approval under Rule 9019, or otherwise.

interest of the parties in interest.'"  Plaintiff Obj. 5 (*quoting* 11 U.S.C. § 704(a)(1)).  The

contention has no merit because § 704(a)(1) is not applicable to chapter 11 trustees.  *See* 11

U.S.C. § 1106(a) (specifying duties of a chapter 11 trustee and incorporating by reference eight

duties of a chapter 7 trustee under § 704(a) of the Bankruptcy Code, but omitting § 704(a)(1)).

In any event, while §§ 704(a) and 1106(a) specify the duties of chapter 7 and 11 trustees,

respectively, those provisions do not purport to describe or address the procedures that those

trustees must follow in fulfilling their duties.  In this instance, that is left to Bankruptcy Rule

9019.[13]

　　　　Next, relying on *In re Telesphere Comm., Inc.*  179 B.R. 544 (Bankr. N.D. Ill. 1994), the

Plaintiff contends that the Agreement is enforceable because the Trustee was not required to

obtain court approval of it.  Plaintiff Obj. 5.  In that case, the debtors, with the support of the

creditors' committee, moved the bankruptcy court for an order authorizing them to compromise

and settle claims that they were asserting against a group of creditors.  Another creditor group

opposed the settlement.  In assessing the merits of the proposed settlement, the court noted that

while Bankruptcy Rule 9019 provides a procedure for obtaining court approval of the

compromise and settlement of claims, it cannot mandate that a party obtain court approval of an

action that, under the Bankruptcy Code, does not otherwise require such approval.  179 B.R. at

552 ("[U]nless the Bankruptcy Code requires court approval for the underlying action that the

---

[13]  In that regard, Plaintiff misplaces his reliance on *In re American Energy, Inc.*, 49 B.R. 420 (Bankr. D.N.D. 1985).
*See* Plaintiff Obj. 5.  Contrary to his assertion, that case does not stand for the proposition that a chapter 11 trustee
"has authority to generally pursue a cause of action, in his best judgment, compromise, settle, or abandon legal
claims," without obtaining court approval. *Id.*  That case did not involve a chapter 11 trustee's compromise and
settlement of an estate claim at all.  There, the bankruptcy court denied, as premature, debtor's motion, joined by the
chapter 11 trustee, for an order determining whether or not certain grain grower contracts were estate property.
*American Energy*, 49 B.R. at 422.  In doing so, the Court found that because "the Trustee [had] not yet determined
whether he [would] treat the grower contracts as an asset of the bankruptcy estate[,]" it was "impossible for the
Court to determine what effect the indetermined action [would] have on the Debtor's interest.  Again, the Debtor has
not sufficiently showed that it has an interest to be protected."  *Id.*

trustee seeks to accomplish, there should be no need for court approval of a settlement that

effectuates that action.").  The court found that the proposed settlement was subject to court

review under § 363(b) of the Bankruptcy Code because the effect of the settlement was to

liquidate estate assets outside the ordinary course of business and approved the settlement.  *Id*. at

552-53.  *Telesphere* represents a minority view of Bankruptcy Rule 9019's application to

compromises and settlements under the Bankruptcy Code.  *See Rafool v. The Goldfarb Corp. (In*

*re Fleming Packaging Corp.*), Bankr. No. 03-82408, Adv. No. 04-8166, 2008 WL 682428, at *2

(Bankr. C.D. Ill. Mar. 7, 2008) (identifying *Telesphere* as being in the minority of cases that

"question whether [Bankruptcy Rule 9019] approval is necessary for every settlement.").  Most

courts, including courts in this district, mandate that debtors and trustees obtain court approval of

proposed compromises and settlements of estate claims, outside the ordinary course of business.

*See In re Leslie Fay*, 168 B.R. 294, 305 (Bankr. S.D.N.Y. 1994) (court approval required for

post-petition agreement that fell outside debtors 'ordinary course of business; "[c]ompromise

may not be made in bankruptcy absent notice and aa hearing and a court order") (citing Rule

9019)); [14] *Rafool*, 2008 WL 682428, at *2 (collecting cases).[15]  In any event, Plaintiff misplaces

---

[14]   The Trustee cites to In *re Tronox Inc.*, Case No. 09-10156, Adv. Proc. No. 09-1198, 2014 WL 5819821, at *6 (Bankr. S.D.N.Y. July 22, 2014), *In re Dewey & LeBeouf LLP*, 478 B.R. 627, 633 (Bankr. S.D.N.Y. 2012), and *Guippone v. BH S&B Holdings, LLC*, No. 09 Civ. 01029, 2011 WL 5148650, at *3 (S.D.N.Y. Oct. 28, 2011), for the proposition that court approval under Bankruptcy Rule 9019 is a condition precedent to the enforcement of a covenant not to sue like the one at the core of the Agreement.  Although each case involved approvals under Rule 9019 of agreements that included covenants not to sue, none considered whether the covenant would be unenforceable without court approval.

[15]   In *Rafool*, the court discussed the two schools of thought on the applicability of Bankruptcy Rule 9019 to settlements, as follows:

> Emphasizing the language of Rule 9019, that a court 'may' approve a compromise, some courts question whether [Bankruptcy Rule 9019] approval is necessary for every settlement. *In re Engman*, 331 B.R. 277 (Bankr. W.D. Mich.2005); *In re Dalen*, 259 B.R. 586 (Bankr. W.D. Mich. 2001); *In re Telesphere [. . .]* (Rule 9019 does not require approval of compromise unless otherwise required by provision of Bankruptcy Code). The majority of courts interpret Rule 9019(a) as requiring court approval for all compromises and settlements. *In re Seminole Walls & Ceilings Corp.*, 366 B.R. 206 (Bankr. M.D. Fla. 2007); *In re Nationwide Sports Distributors, Inc.*,

his reliance on *Telesphere* since even under its rationale, the Trustee was not free to proceed

under the Agreement without first obtaining this Court's approval.  The Agreement purports to

compromise estate claims against the Parents through the covenant not to sue them.  Under

*Telesphere*, the Trustee was not free to make the Agreement without first obtaining the Court's

approval under § 363(b) of the Bankruptcy Code.  *See* 179 B.R. at 552.  The Trustee failed to do

so.  As such, the Agreement is not enforceable.

Finally, adopting an argument raised by the Parents, Plaintiff, citing *Santobello v. New

York*, 404 U.S. 257 (1971) and *Palermo v. Warden, Green Haven State Prison*, 545 F.2d 286 (2d

Cir. 1976), contends that the Trustee should be bound by the Agreement in the same way that a

prosecutor is bound to a sentencing agreement on which a defendant relies when reaching a plea

agreement.  Together, *Santobello* and *Palermo* stand for the proposition that in a criminal case, a

defendant is entitled to relief from a plea agreement when the prosecutor either fails to fulfill

promises within his power made in negotiating a plea bargain, or makes unfulfillable promises in

reaching that bargain.  *See Santobello*, 404 U.S. at 261-62 (addressing prosecutorial failure to

keep plea promise*); Palermo*, 545 F.2d at 297 (binding prosecutor to unfulfillable plea deal

promise).  Plaintiff cites no basis for treating the Trustee's covenant not to sue like a prosecutor's

plea agreement and the Court finds none.  First, in reaching the Agreement, the Trustee was not

---

227 B.R. 455 (Bankr. E.D. Pa. 1998); *In re Cincinnati Microwave, Inc.*, 210 B.R. 130 (Bankr.
S.D. Ohio 1997); *[. . .] Leslie Fay [. . .]*; *In re Rothwell*, 159 B.R. 374 (Bankr. D. Mass. 1993)
(relying on predecessor Rule 919 and case law under Bankruptcy Act); *See In re
OptInRealBig.com, LLC*, 345 B.R. 277 (Bankr. D. Colo. 2006). As interpreted by the court in *In re
OptInRealBig.com, LLC*, the permissive language of Rule 9019(a) refers to the court's discretion
to approve or to disapprove a particular settlement. 345 B.R. at 291. Only when the court approves
a settlement does it become enforceable against both parties. *In re Seminole Walls & Ceilings*, 366
B.R. at 231; *In re Degenaars*, 261 B.R. 316 (Bankr. M.D. Fla. 2001).

*Id.* at *2.

acting as a law enforcement officer.[16]  Moreover, unlike covenants not to sue, plea agreements

are enforced because they are critical to the efficient administration of the criminal justice

system, *Santobello*, 404 U.S. at 260-61, and, more importantly, because they implicate a host of

fundamental constitutional rights.  *Id*. at 264 (Douglas, J.) (concurring) (stating that a guilty plea

"is a serious and sobering occasion inasmuch as it constitutes a waiver of the fundamental rights

to a jury trial, to confront one's accusers, to present witnesses in one's defense, to remain silent,

and to be convicted by proof beyond all reasonable doubt.") (citations omitted).  None of those

considerations are present in this case and there is no merit to Julian's argument.

It is settled that "a properly raised affirmative defense can be adjudicated on a motion to

dismiss so long as (i) the facts establishing the defense are definitely ascertainable from the

complaint and the other allowable sources of information, and (ii) those facts suffice to establish

the affirmative defense with certitude."  *Rodi v. Southern New England School of Law*, 389 F.3d

5, 12 (1st Cir. 2004).  *See also Flight Sys., Inc. v. Electronic Date Sys*., 112 F.3d 124, 127 (3d

Cir. 1997) (stating that affirmative defense may be raised by motion to dismiss only if defense

appears on the face of the pleadings and presents "insuperable barrier to recovery by plaintiff.").

Based on the foregoing, the Court finds that, even as limited by the allegations in the Complaint,

the Trustee has established, with certitude, that the Agreement is unenforceable because it has

---

[16] In *Kittay v. Battle Fowler (In re Stockbridge Funding Corp.*), 153 B.R. 654 (Bankr. S.D.N.Y. 1993), the court likened a chapter 11 trustee to an F.B.I. agent or an assistant United States attorney.  But that case does not support Julian's argument because it is clearly distinguishable from this one.  There, a chapter 11 trustee had conducted an investigation into the possible commission of bankruptcy crimes by, among others, a law firm and partner at that firm.  In accordance with 18 U.S.C. § 3057(a), on several occasions, the trustee conferred with the United States attorney on matters where he reasonably believed that a bankruptcy crime may have been committed or that a criminal investigation should be commenced.  *Id.* at 655.  The law firm sought discovery of the trustee's oral and written communications regarding his investigation of possible crimes.  *Id.*  The trustee resisted, contending that communications were privileged under a "bankruptcy crimes investigation privilege" under § 3057.  *Id.*  The court agreed, finding that under the statutory scheme relating to bankruptcy crimes under § 3057(a), "a bankruptcy trustee is part of law enforcement as much as an assistant United States attorney or an F.B.I. agent."  *Id.* at 656.  As the court's rationale is clearly limited by the application of § 3057 to the facts of that case, *Stockbridge* provides no support for Plaintiff's claim that the Trustee should be held to the standards of a prosecutor.

not been approved by this Court.  As such, the Trustee has established grounds under Rule 12(b)(6) to dismiss the Second Cause of Action.

### Standing to Sue

As noted previously, the Trustee also contends that the Second Cause of Action should be dismissed because Julian is not the "real party in interest" to seek to bar prosecution of the Recovery Action, and, in any event, lacks standing to seek to enjoin prosecution of that action. He reasons that Julian "cannot demonstrate that the alleged breach of promise not to sue his parents caused him an injury in fact" since "[Julian] is not the party who was allegedly damaged by the alleged breach of promise, and a favorable ruling would not benefit him."  Memo. at 14. He maintains that Julian is "seeking to assert rights on behalf of his parents rather than his own." *Id.*  Julian disputes those assertions and argues that he has standing to assert the breach of contract claim because "he is the one who made the deal with the Trustee [and] is the one that worked tirelessly to have the Trustee approve the potential buyer all so that his parents and brother would not be . . . sued."  Plaintiff Obj. 4.

"Both standing and real party in interest are used to designate a plaintiff who possesses a sufficient interest in the action to entitle him to be heard on the merits."  *Weissman v. Weener*, 12 F.3d 84, 86 (7th Cir. 1993).  The doctrine of standing requires a plaintiff to show that he suffered injury in fact traceable to the defendant's conduct and that this injury can be redressed by the relief the plaintiff seeks.  *See, e.g.*, *Lujan v Defenders of Wildlife*, 504 U.S. 555, 559 (1992).[17]

---

[17] In *Lujan*, the Supreme Court discussed the doctrine of standing, as follows:

> Over the years, our cases have established that the irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized and (b) "actual or imminent, not 'conjectural or hypothetical.'"  Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before

On the other hand, the real party in interest doctrine requires that every action be prosecuted by the entity possessing the particular right sought to be enforced. *See* Fed. R. Civ. P. 17(a)(1) ("[a]n action must be prosecuted in the name of the real party in interest . . . ."). *See also Firestone v. Galbreath*, 976 F.2d 279, 283 (6th Cir. 1992) ("[T]he real party in interest principle is a means to identify the person who possesses the right sought to be enforced.") (quoting 6A Charles A. Wright, Arthur R. Miller & Mary K Kane, Federal Practice and Procedure § 1542 (1990)). Standing is jurisdictional, but real party in interest is not. *See Tate v. Snap-On Tools Corp*., No. 90 C 4436, 1997 WL 106275 at *4 (N.D. Ill. Feb. 11, 1997). *See also Lunney v. United States*, 319 F.2d 550, 556-57 (2d Cir. 2003) ("Rule 17(a) cannot be construed to extend subject matter jurisdiction."); *Clarex Ltd. v. Natixis Securities America LLC*, No. 12 Civ. 0722, 2012 WL 4849146, at *7 (S.D.N.Y. Oct. 12, 2012) ("Rule 17(a) 'address[es] party joinder, not federal subject-matter jurisdiction.'") (quoting *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 82 (2005)). To the extent the Complaint pleads an injury to Julian at all, it does so in the most conclusory manner. The closest the Plaintiff comes to alleging a direct injury to himself is the assertions that "[t]ill this day I suffer from nightmares from all [the Trustee's] wrong doings" and "[h]e had caused me my marriage and ruined my life just for greed." Compl. ¶ 15. Notably, even as he makes those allegations, Julian undercuts them by contending that the Trustee's "acts and omissions were done willfully and maliciously *to injure Big Apple Volkswagen and its property*." *Id.* ¶ 28 (emphasis added). Even under the most liberal reading of this *pro se* Complaint, the Plaintiff has failed to allege "injury in fact" sufficient to establish standing to sue

---

the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

504 U.S. at 560-61 (alteration in original) (citations omitted) (footnote omitted).

since he has failed to allege "concrete and particularized injury" that is "actual" and "fairly

traceable" to the Trustee's commencement of the Avoidance Acton. *See Lujan*, 504 U.S. at 560-

61. *See also Connecticut v. Physicians Health Serv. Of Connecticut, Inc.*, 287 F.3d 110, 118 (2d

Cir. 2002) (dismissing complaint for plaintiff's lack of standing for failure "to allege that it

suffered an 'injury in fact' that is 'particularized.'") (citing *Lujan*, 504 U.S. at 560); *O.K.

Petroleum Distrib. Corp.*, No. 09 Civ. 5094, 2009 WL 2432725, at *2-3 (S.D.N.Y. Aug. 5, 2009)

(dismissing complaint for failure to allege an injury-in-fact).

 That Julian may be asserting claims for the benefit of his Parents, as third party

beneficiaries of the Agreement, does not disqualify him from pursuing that claim.  Rule

17(a)(1)(F) provides that "a party with whom or in whose name a contract has been made for

another's benefit" may sue in its "own name[] without joining the person for whose benefit the

action is brought."   However, the party seeking third-party standing in federal court on behalf of

a real party in interest "must also satisfy the prudential prerequisites of standing by

demonstrating a close relation to the injured third party and a hindrance to that party's ability to

protect its own interests."  *Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*,

418 F.3d 168, 174 (2d Cir. 2005).  For instance, third-party standing will be denied when the

party seeking that status has not demonstrated that a hindrance exists that prevents the real party

in interest from protecting their own interests.  *Id.*  Plaintiff fails to satisfy that requirement

because the Complaint is devoid of allegations establishing Julian's right to act on behalf of his

Parents.  Based on the foregoing, the Court finds that Julian has not alleged facts sufficient to

establish his standing to sue the Trustee on his own behalf or that he is a party in interest who

can prosecute the action for his Parents' benefit.  It is not clear whether Julian could remedy

those defects if given the opportunity to do so.  In any event, and as explained below, the Court

will not grant Julian leave to replead the allegations in support of this claim since the Trustee's

failure to obtain approval of the Agreement renders it unenforceable.

**Laches**

Finally, the Court considers whether laches is a defense to the Second Cause of Action.

Laches "is an equitable defense that 'bars a plaintiff's equitable claim where he is guilty of

unreasonable and inexcusable delay that has resulted in prejudice to the defendant.'" *Ikelionwu*

*v. United States*, 150 F.3d 233, 237 (2d Cir. 1998) (quoting *Ivani Contracting Corp. v. City of*

*New York*, 103 F.3d 257, 259 (2d Cir. 1997).   Application of the defense is a "question primarily

addressed to the discretion of the trial court," but which must include in its consideration the

equities of the parties.   *Gardner v. Panama R. Co.*, 342 U.S. 29, 30-31 (1951) (per curiam).

Because that requires a balancing of the equities and a fact-intensive analysis that may call the

court to look outside the pleadings at issue, the assertion of the affirmative defense of laches

generally does not lend itself well to Rule 12(b)(6) motions.   *See*, e.*g.*, *George Nelson Found. v.*

*Modernica, Inc.*, 12 F. Supp. 3d 635, 655 (S.D.N.Y. 2014) (rejecting laches defense on motion to

dismiss when defendant showed no prejudice from plaintiff's failure to act sooner as well as

existence of disputed facts relevant to timing issues).   "However, in certain circumstances, when

the defense of laches is clear on the face of the complaint, and where it is clear that the plaintiff

can prove no set of facts to avoid the insuperable bar, a court may consider the defense on a

motion to dismiss." *Lennon v. Seaman*, 63 F. Supp. 2d 428, 439 (S.D.N.Y. 1999).   The Trustee

contends that laches bars the Second Cause of Action because

> [Julian] has been active in this bankruptcy case since its inception in 2011.
> [Julian] appeared before the Court on several occasions and made submissions
> orally and in writing. [Julian] was also deposed at length in 2011 specifically
> about the more than $700,000 he transferred to his parents shortly before the
> Debtor filed its bankruptcy case.   Not once in Court submissions or at his

19

deposition did [Julian] assert that the Trustee had orally agreed to forego a lawsuit against his parents as he claims in the Second Cause of Action.

Memo. 15.  All of that may be true (although the Court makes no such findings), but none of it is clear from the face of the Complaint or documents accessible to the Court in connection with the Motion.  Accordingly, the Trustee has failed to establish that the Second Cause of Action should be dismissed on the grounds of laches.  *See, e.g.*, *Lucky Brand Dungarees Inc. v. Ally Apparel Res. LLC*, 05 Civ. 6757, 2006 WL 3771005, at *6 (S.D.N.Y. Dec. 20, 2006) (denying motion to dismiss based on laches; court could not say that defendants could not prove any set of facts to avoid laches defense); *Lennon*, 63 F.Supp.2d at 439 (finding that deciding laches defense on Rule 12(b)(6) motion inappropriate when allegations from both side would "bear on the applicability of the defense of laches if found to be accurate.").

Based on the foregoing, the Court finds that failure to obtain this Court's approval of the Agreement bars its enforcement and is grounds to dismiss the Second Cause of Action.

### Third Cause of Action

Plaintiff's Third Cause of Action seeks an injunction "to compel [the T]rustee from suing Ratiba Salim and Wahid Saleem."  Compl. ¶ 27.[18]  As a stand-alone claim for relief it must be dismissed because "[t]here is no 'injunctive' action under New York or federal law."  *Reuben H.*

---

[18] In support of his Third Cause of Action, the Plaintiff alleged that the Trustee's "act[s] and omissions were done willfully and maliciously to injure Big Apple Volkswagen and its property."  Compl. ¶ 28.  To the extent those allegations are intended to support a claim by the Plaintiff for punitive damages occasioned by the Trustee's breach of contract, they have no merit.  It is well settled that plaintiffs may not recover punitive damages for breach of contract. *See, e.g.*, *New York Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308 (1995); *Rocanova v. Equitable Life Assur. Soc'y.*, 83 N.Y.2d 603, 613 (1994).  However, punitive damages may be available under limited circumstances to redress an accompanying tort involving behavior of "such wanton dishonesty as to imply a criminal indifference to civil obligations." *Rocanova*, 83 N.Y.2d at 613 (quoting *Walker v. Sheldon*, 10 NY2d 401 (1961)).  "It is a well-established principle that a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated."  *Clark-Fitzpatrick, Inc. v. Long Island R. Co.*, 70 N.Y.2d 382, 389 (1987).  The only tortuous conduct claim alleged in the Complaint was the First Cause of Action's claim for breach of fiduciary duty.  That claim was dismissed by Plaintiff at the Hearing.  Accordingly, there is no basis upon which the Plaintiff can assert a claim against the Trustee for willful and malicious injury.  In any event, even if he could, the claim would be time-barred under the one year statute of limitations for intentional torts.  *See* NY CPLR § 215.

*Donnelley Corp. v. Mark I Mktg. Corp.*, 893 F. Supp. 285, 293 (S.D.N.Y. 1995).  *See also Chiste v. Hotels.com L.P.*, 756 F.Supp.2d 382, 407 (S.D.N.Y. 2010) (an "[i]njunction is not a separate cause of action; it is a remedy.")   "Instead, [Julian] must allege some wrongful conduct on the part of [the Defendants] for which [his] requested injunction is an appropriate remedy." *Reuben*, 893 F. Supp. at 293.  Julian's right to injunctive relief, if any, is dependent on the viability of the Second Cause of Action, as amended on the record of the Hearing.  *See, e.g.*, *KM Enters., Inc. v. McDonald*, 11-cv-5098, 2012 WL 4472010, at *20 (E.D.N.Y. Sept. 25, 2012) (dismissing request to restrain against taking official action in violation of federal law because "no substantive federal claim remains upon which the [p]laintiff can base its request for . . . injunctive relief.").[19]  The Court has determined that the cause of action is not viable.  Accordingly, the Third Cause of Action, either standing alone or read in conjunction with the Second Cause of Action, will be dismissed.

**Plaintiff's Request for Leave to Replead**

The Plaintiff seeks leave to amend the Complaint under Rule 15(a)(2), in the event the Court grants the Motion "in part or its entirety."  Plaintiff Obj. p. 8.  "Generally, leave to amend should be freely granted when justice so requires unless it would be futile." *Gowan v. Wachovia Bank, N.A.*, 453 B.R. 499, 518 (Bankr. S.D.N.Y. 2011) (citing *Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 5 (2d Cir. 1995)).  Moreover, *pro se* plaintiffs are provided generous latitude to replead when their complaint is dismissed under Rule 12(b)(6) for failure to state a claim. *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991) (stating that courts are not to dismiss a complaint "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim

---

[19] Of course, separate and apart from that, the Plaintiff must also allege that he will suffer irreparable harm if the Recovery Action goes forward and that the balance of equities weighs in his favor. *Travellers Int'l AG v. Trans World Airlines, Inc.*, 722 F. Supp. 1087, 1096 (S.D.N.Y.1989).  He has failed to do so.

which would entitle him to relief . . . [especially] where the plaintiff is appearing *pro se*.")

(citations and quotation marks omitted).  A request to replead will be denied, however, if

repleading is not warranted and would be futile.  *See e.g. Thompson v. Accent Capital*, Civ. No.

3:11 CV 00069, 2011 WL 3651848, at *5 (D. Conn. Aug. 18, 2011) (denying *pro se* plaintiff

leave to replead claim barred by statute of limitations) (citing *Cuoco v. Moritsugu*, 222 F.3d 99,

112 (2d Cir. 2000).

This is such a case.  Although the Plaintiff might be able to remedy the pleading defects

relating to his standing for bringing the Second Cause of Action, the Agreement would

nonetheless remain unenforceable because it was not approved by the Court.  Since it would be

futile to grant Plaintiff leave to replead, Julian's request to do so is **DENIED**.

## Conclusion

The Trustee's motion to dismiss the Complaint is **GRANTED**.  The Trustee is directed to

submit an order.

Dated: New York, New York
        May 19, 2016

/s/ *James L. Garrity, Jr.*
Hon. James L. Garrity, Jr.
U.S. Bankruptcy Judge